THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP RULE 77(d).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

PRIORITY SEND

**CIVIL MINUTES -- GENERAL**

| | |
|---|---|
| Case No.  **CV 06-7599-JFW (PLAx)** | Date: October 16, 2007 |
| Title:  In Re: Hansen Natural Corporation Securities Litigation | |

---

**PRESENT:**

**HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE**

| Shannon Reilly | None Present |
|---|---|
| Courtroom Deputy | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFFS: | ATTORNEYS PRESENT FOR DEFENDANTS: |
|---|---|
| None | None |

**PROCEEDINGS (IN CHAMBERS):**    **ORDER GRANTING MOTION OF HANSEN NATURAL CORPORATION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT [filed 6/25/07; docket no. 85]; and**



**ORDER GRANTING INDIVIDUAL DEFENDANTS' MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT [filed 6/25/07; docket no. 83]**

On June 25, 2007, Defendant Hansen Natural Corporation ("Hansen") filed its Motion to Dismiss Consolidated Class Action Complaint. On June 25, 2007, Defendants Rodney C. Sacks, Hilton H. Schlosberg, Mark J. Hall, Thomas J. Kelly, Michael B. Schott, Norman C. Epstein, Harold C Taber, and Mark S. Vidergauz (collectively, "Individual Defendants") ("Individual Defendants" and "Hansen" will be known collectively as "Defendants") filed their Motion to Dismiss Consolidated Class Action Complaint.  On August 16, 2007, Lead Plaintiff Jason E. Peltier ("Plaintiff") filed his Omnibus Opposition to Defendants' Motions to Dismiss Consolidated Class Action Complaint.  On September 12, 2007, Defendants filed their Consolidated Reply Brief in Support of Their Motions to Dismiss.  The Court found the matter appropriate for submission on the papers without oral argument.  See Local Rule 7-15; Fed. R. Civ. Proc. 78.  The matter was, therefore, removed from the Court's September 24, 2007, hearing calendar, and the parties were given advance telephonic notice.  After considering the moving, opposing, reply, and supplemental papers, and the arguments therein, the Court rules as follows:

**I.    Factual and Procedural Background**

In this case, plaintiff Glenn D. Hutton filed a class action complaint against Hansen and

certain of its current and former officers and directors on November 29, 2006. Subsequently, four other plaintiffs, namely Benjamin Kingery, George Walker, Denise Williams, and James A. Ziolkowski, filed separate actions. On February 23, 2007, the Court consolidated the five class actions, appointed plaintiff Jason E. Peltier as lead plaintiff, and appointed lead counsel. On April 30, 2007, Plaintiff filed his Consolidated Class Action Complaint for Violations of the Federal Securities Law. On May 1, 2007, Plaintiff filed his Corrected Consolidated Class Action Complaint for Violations of the Federal Securities Law ("Complaint").

Plaintiff's Complaint alleges securities fraud by Hansen, a company engaged in the development, marketing, sale and distribution of beverages in the United States and Canada, and certain of its current and former officers and directors for violations of the Securities Exchange Act of 1934 ("Exchange Act"). Specifically, the Complaint alleges one claim for relief for violation of Section 10(b) and Rule 10b-5 against all the Defendants, and another claim for relief for violation of Section 20(a) against the Individual Defendants.

The plaintiff class encompasses investors who purchased the securities of Hansen between November 12, 2001 and November 9, 2006 (the "Class Period"). Plaintiff alleges that, throughout the Class Period, Hansen issued a number of materially false and misleading reports because it failed to disclose: (1) that Defendants engaged in backdating of stock options grants for certain executives[1]; (2) that Hansen lacked adequate internal controls and was therefore unable to ascertain its true financial condition; and (3) that Defendants engaged in improper accounting practices.

### A.   Defendants.

Hansen is a Delaware corporation with its principal place of business in Corona, California. Complaint, ¶ 15. Through its direct wholly-owned subsidiaries, Hansen Beverage Company ("HBC") and Monster LDA Company ("Monster"), Hansen develops, markets, and sells energy drinks, soft drinks, and other beverages. Id. at ¶¶ 16-17. During the Class Period alleged in the Complaint, Hansen reported increases in sales and profits, with its stock price rising from $4 per share on November 12, 2001, to $199.04 on a split-adjusted basis on November 9, 2006. Id. at ¶¶ 102, 108, 113, 121 & 123.

Plaintiff has named eight individual defendants in the Complaint. Three of the Individual Defendants are independent, outside directors. Norman C. Epstein has been an outside director since June 1992, a member of the Compensation Committee since June 1992, and the Audit Committee Chairman since September 1997. Id. at ¶ 30. Epstein also was named in the October

---

[1] In April of 2006, "option backdating" gained national attention after the *Wall Street Journal* published a series of articles questioning the timing of stock option grants at various public companies. Thereafter, the Securities and Exchange Commission and the Department of Justice launched inquiries into the "backdating" practice of many companies. As a result, option backdating has been the subject of intense scrutiny by the SEC and federal prosecutors. These cases have become the newest trend in non-traditional securities actions. *See, e.g., CNET Networks, Inc. Shareholder Deriv. Litig.*, 483 F. Supp. 2d 947, 949-50 (N.D. Cal. 2001) (describing mechanics of option backdating); *see, also,* Complaint ¶¶ 49-60.

20, 2006, Glass Lewis & Co report as having filed a late Form 4. *Id.* at ¶ 94. Harold C. Taber, Jr. has been an outside director since June 1997, a member of the Audit Committee since April 2000, and was President, CEO, and Director of HBC from October 1992 to June 1997. *Id.* at ¶ 32. Mark S. Vidergauz has been an outside director since June 1998, a member of the Compensation Committee since June 1998, and was a member of the Audit Committee from April 2000 to May 2004. *Id.* at ¶ 34. With respect to Epstein, Taber, and Vidergauz, the Complaint alleges only that each of these Individual Defendants signed Hansen's annual financial reports and a single Form S-8, served as members of either the Compensation Committee or Audit Committee, received fees for their services as outside directors, and sold Hansen stock. *Id.* at ¶¶ 30, 33, 35, 73, 77, 82-84, 86, 96-97, 102, 107-08, 113, 121, 151-152, 166 & 169.

The other five Individual Defendants are current officers of Hansen or one of its subsidiaries. Rodney C. Sacks has been the Chief Executive Officer and Chairman of the Board since November 1990, a member of the Executive Committee of the Board since 1992, and Chairman and director of HBC since June 1992. *Id.* at ¶ 19. Hilton H. Schlosberg has been President, Vice Chairman of the Board, Chief Operating Officer, Secretary and Director since November 1990, Vice Chairman of the Board of HBC since July 1992; Chief Financial Officer since July 1996, a member of the Audit Committee from September 1997 to April 2000, and a member of the Executive Committee since 1992. *Id.* at ¶ 18. Mark J. Hall has been HBC's President, Monster Beverage Division since 2006. *Id.* at ¶ 21. The Complaint does not allege that Hall signed any of the allegedly false and misleading statements. *See,* Complaint, generally. Thomas J. Kelly has been HBC's Vice President of Finance since 2005. *Id.* at ¶ 27. The Complaint does not allege that Kelly signed any of the documents containing allegedly false and misleading statements *See,* Complaint, generally. Michael B. Schott has been HBC's Senior Vice President, National Sales, Monster Beverage Division since 2006, and was Senior Vice President, Single Serve Products from 2002 to 2005. *Id.* at ¶ 24. The Complaint does not allege that Schott signed any of the allegedly false and misleading statements. *See,* Complaint, generally.

With respect to all the Individual Defendants, the Complaint alleges that "[i]t is appropriate to treat the Individual Defendants as a group for pleading purposes and to presume that the false, misleading and incomplete information conveyed in the Company's public filings, press releases and other publications as alleged herein are the collective actions of the narrowly defined group of defendants identified above." *Id.*, ¶ 154.

### B. Summary of Factual Allegations in the Complaint.

During the Class Period, Hansen had four stock option plans, each of which required that stock options be priced at no less than the "Fair Market Value" of Hansen's stock on the date of the grant. *Id.* at ¶ 66. "Fair Market Value" was defined as the mean of the NASDAQ high and low sales prices of Hansen common stock on the day of the grant. *Id.* at ¶¶ 73-74. The Executive Committee was authorized by the Board to grant options to employees while the Compensation Committee was given the authority to grant options to the members of the Executive Committee. *Id.* at ¶ 68.

Plaintiff alleges that millions of stock options were granted during the Class Period in violation of the stock option plans because they were not granted at the Fair Market Value on the

date of the grant, but were dated to a date when Hansen's stock price was lower, either just prior to a sharp increase in the trading price of Hansen's stock, at the bottom of a steep drop in the stock's price, or both. *Id.* at ¶ 81. Specifically, Plaintiff alleges that 83.3% of the stock options granted during the Class Period experienced a significant rise in Hansen's stock price just ten days after the grant date. *Id.* at ¶ 90. Plaintiff also alleges that "almost all of them were dated just after a steep drop in price" and "[a]ll but one of the foregoing stock option grants were dated at either a low point in the stock price (trough) or on an upward trend." *Id.* Plaintiff further alleges that this timing could not be the result of chance because "while positive returns for a single grant might be innocently explained, a consistent pattern of frequent and well-timed grants makes backdating the most plausible -- if not the only plausible -- explanation." *Id.* at ¶ 91.

Plaintiff also alleges that during the Class Period, Hansen issued press releases and filed various quarterly and annual reports with the SEC, including Form 10-Qs, Form 10-Ks, and proxy statements, that repeatedly: (1) falsely reported net income; (2) falsely reported the dates of option grants; (3) falsely reported that the exercise prices of options granted were set at the fair market value of Hansen common stock on the date of the grant; (4) falsely stated that Hansen accounts for its stock option plans in accordance with Accounting Principles Board Opinion No. 25 ("APB 25"); (5) falsely stated that Hansen's financial statement were prepared in accordance with GAAP; (6) falsely stated that "the Company's disclosure controls and procedures are effective;" and (7) contained certifications pursuant to Sections 302 and 906 of Sarbanes-Oxley, signed by Hansen's CEO and CFO that falsely stated that the "information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company," and did not "contain any untrue statements of a material fact." *Id.* at ¶¶ 95-129. Plaintiff alleges that these statements were false and misleading when made because Hansen failed to disclose that: (a) Defendants had engaged in the backdating of stock option grants for certain key executives of Hansen during the Class Period; (b) Hansen lacked adequate internal controls and was therefore unable to ascertain its true financial condition; and (c) Defendants engaged in improper accounting practices in violation of GAAP. *Id.* at ¶ 3.

In addition, Plaintiff alleges that during the Class Period the Individual Defendants sold thousands of their Hansen shares and made millions of dollars as a result, including: Schlosberg ($92.1 million or 42.83% of his holdings); Sacks ($92.1 million or 42.41 % of his holdings), Hall ($22.9 million or 20.68% of his holdings), Schott ($4.9 million); Kelly ($3.2 million), and Taber ($ 2.2 million, or 98.24 % of his holdings). *Id.* at ¶¶ 166-69. Plaintiff further alleges that in the two years preceding the Class Period, Sacks and Schloseberg increased their Hansen stock holdings by 0.53% and 0.59%, respectively. *Id.* at ¶¶ 167-68.

Finally, Plaintiff alleges that on October 20, 2006, Glass Lewis & Co., an investment research firm, published a Yellow Card Trend Alert entitled "Late Form 4s -- The Backdating Scandal's Second Act?" *Id.* at ¶ 93. The report identified Hansen as one of several companies that had granted options to directors or employees who were then late in filing SEC Form 4 reports disclosing the grants. *Id.* On October 26, 2006, the SEC's Pacific Regional Office asked Hansen to voluntarily provide certain documents and information relating to its SEC Form 4 filings and its stock option grants from January 1, 1996 through the date of the letter. *Id.* at ¶ 130. This request

was eventually limited to the time period starting on January 1, 2001. RJN, Ex. F, at 24.[2] The SEC's request was disclosed to investors on October 31, 2006, when Hansen filed a Form 8-K with the SEC just prior to the close of trading. Complaint, ¶ 130.

On November 6, 2006, before the market opened, Hansen issued a press release

---

[2] Defendants ask the Court to take judicial notice of several documents, labeled Exhibits A through P in Defendants' Request for Judicial Notice in Support of Motion to Dismiss Consolidated Class Action Complaint ("RJN"). With respect to Exhibits A, B, C, D, H, I, J, K, L, and O, Plaintiff does not object to the Court judicially noticing these documents, all of which are Hansen's SEC filings or other documents referenced in the Complaint. Therefore, the Court grants Defendants' request for judicial notice with respect to these documents under the incorporation by reference theory. See, e.g., In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999) (holding that a Court may take judicial notice of documents "whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading"). In addition, Plaintiff does not object to the Court judicially noticing Exhibit N (the publicly-listed prices of Hansen common stock from January 1, 1997 through June 22, 2007) or Exhibit P (several Form 4s filed during the Class Period). In addition, both Hansen's stock price and the filing of Form 4s during the Class Period are specifically referenced in the Complaint. Therefore, the Court grants Defendants' request for judicial notice with respect to Exhibits N and P. In re Calpine Corp. Sec. Litig., 288 F. Supp. 2d 1054, 1076 (N.D. Cal. 2003) (holding that a court "may properly take judicial notice of SEC filings and documents expressly referenced" in the complaint); Morgan v. AXT, Inc., 2005 U.S. Dist. LEXIS 42346 at *21-22 (N.D. Cal. Sept. 23, 2005) (taking judicial notice of SEC Form 4s that were not specifically referenced in the Complaint); In re Merck & Co. Sec. Litig., 432 F.3d 261, 264 n.3 (3d Cir. 2005) ("We can take judicial notice of Merck's stock price even on a motion to dismiss because these are 'not subject to dispute and are capable of accurate and ready determination by resort to a source whose accuracy cannot be reasonably questioned.'") (internal citation omitted). However, Plaintiff does object to the Court taking judicial notice of Exhibits E, F, G, and M, all of which are SEC filings that were filed after the date on which Plaintiff filed his Complaint, on the grounds that these documents are not referenced in the Complaint and are dated after the filing of the Complaint on May 1, 2007. The Court grants Defendants' request for judicial notice with respect to Exhibits E, F, G, and M. As the court stated in Cummings v. Koninklijke Philips Electronics, 2002 U.S. Dist. LEXIS 23383, *5 (N.D. Cal. Nov. 25, 2002), "[w]hile the general rule is that 'matters outside the pleadings are not to be considered by the court in ruling on a 12(b)(6) motion to dismiss,' in a securities action a court may also consider documents that the defendant has attached to its motion to dismiss either as exhibits or accompanied by a request for judicial notice." See, also, In re Netflix, Inc. Sec. Litig., 2005 WL 1562858, *5 (N.D. Cal. June 28, 2005) (holding that "SEC filings are appropriately noticed by the Court" on a motion to dismiss, even when those documents were filed with the SEC outside the class period); In re Zoran Corp. Derivative Litig., ___ F.Supp. 2d ___, 2007 WL 1650948 (N.D. Cal. June 5, 2007) (judicially noticing Form 10-K filed after the complaint was filed where complaint alluded to future filing of 10-K). Finally, with respect to Exhibits Q and R, which are contained in Defendants' Supplemental Request for Judicial Notice in Further Support of Defendants' Motions to Dismiss, the Court denies Defendants' request for judicial notice because the Court will not consider new evidence presented for the first time in a Reply. See, e.g., United States v. Patterson, 230 F.3d 1168, 1172 (9th Cir. 2000).

announcing it had appointed a Special Committee and hired independent counsel "to undertake a special investigation of certain option grants." *Id.* at ¶ 131. Hansen also reported that it may be unable to timely announce its financial results for the third quarter of 2006. *Id.* On November 9, 2006, Hansen issued a press release announcing that, pending completion of the Special Committees investigation, it would be unable to file its Form 10-Q for the third quarter of 2006. *Id.* at ¶ 132.

On March 23, 2007, Hansen filed a Form 8-K announcing the results of the Special Committee's investigation into its stock option granting practices and procedures, which had been presented to Hansen's Board of Directors on March 16, 2007. *Id.* at ¶ 143. The Special Committee, which retained independent counsel and accounting advisors to assist in the investigation, reviewed all stock option grants from January 1, 2001 through November 13, 2006, and in the course of the investigation, reviewed over one million documents and emails and extensively interviewed numerous officers, directors, and employees of Hansen. *Id.*; RJN, Ex. L, at item 8.01. The Special Committee found no willful or intentional misconduct in connection with the granting or dating of, or the accounting for, stock options at Hansen. *Id.*; RJN, Ex. F, at 31. The Special Committee also found that the late filing of Form 4s did not support a finding that the option grants had been backdated. *Id.* The Special Committee further found no evidence raising concerns about the integrity of management, but instead found that management and other Hansen personnel who were interviewed were cooperative and credible. *Id.*

### C. Events Subsequent to the Filing of the Complaint.

On May 14, 2007, Hansen filed its previously delayed Form 10-Q for the third quarter of 2006. RJN, Ex. F. While the Special Committee's investigation did result in minor adjustments to the accounting for some stock options grants, Hansen, in consultation with its outside auditors, Deloitte & Touche LLP, determined that the impact of these accounting errors was immaterial to Hansen's historical financial statements for any previously reported period. *Id.* at 24-25  On June 6, 2007, Hansen filed its Form 10-K for 2006, which contained an unqualified Deloitte & Touche LLP audit opinion, in which Deloitte and Touche LLP stated that Hansen's financial statements, in all material respects, fairly presented Hansen's performance and were in accordance with Generally Accepted Accounting Principles. RJN, Ex. E at 58 & 91.

## II.   Legal Standard

Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act ("PSLRA") govern the pleading requirements for claims under 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5. *See Yourish v. California Amplifier*, 191 F.3d 983, 993 (9th Cir. 1999); *Cooper v. Pickett*, 137 F.3d 616, 628 n. 2 (9th Cir. 1997); *see also* William W. Schwarzer, A. Wallace Tashima, & James M. Wagstaffe, California Practice Guide, *Federal Civil Procedure Before Trial* § 8:45.10.

Rule 9(b) provides. "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). The heightened pleading requirements of Rule 9(b) are designed "to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Neubronner v. Milken*, 6 F.3d 666, 671 (9th

Cir. 1993). In order to provide this required notice, "the complaint must specify such facts as the times, dates, places, and benefits received, and other details of the alleged fraudulent activity." *Id.* at 672. Further, "a pleader must identify the individual who made the alleged representation and the content of the alleged representation." *Glen Holly Entertainment, Inc. v. Tektronix, Inc.*, 100 F. Supp. 2d 1086, 1094 (C.D. Cal. 1999).

The PSLRA requires a heightened pleading standard for allegations regarding misleading statements and omissions that is similar to the heightened pleading standard required by Rule 9(b). "The purpose of this heightened pleading requirement was . . . to put an end to the practice of pleading 'fraud by hindsight.'" *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1084-85 (9th Cir. 2002) quoting *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 988 (9th Cir. 1999). The PSLRA specifically provides:

> [T]he complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.

15 U.S.C. § 78u-4(b)(1).

In addition, the PSLRA requires a heightened pleading standard for state of mind: "the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2); *see also Silicon Graphics*, 183 F.3d at 974 ("We hold that a private securities plaintiff proceeding under the PSLRA must plead, in great detail, facts that constitute strong circumstantial evidence of deliberately reckless or conscious misconduct"). "To allege a 'strong inference of deliberate recklessness,' [PTSX] 'must state facts that come closer to demonstrating intent, as opposed to mere motive and opportunity.'" *DSAM Global Value Fund v. Altris Software, Inc.*, 288 F.3d 385, 388 (9th Cir. 2002) quoting *Silicon Graphics*, 183 F.3d at 974. "[R]ecklessness only satisfies scienter under § 10(b) to the extent it reflects some degree of intentional or knowing misconduct." *Silicon Graphics*, 183 F.3d at 976-77.

## III.   Discussion

### A.   Violation of Section 10(b) and Rule 10b-5

#### 1.   Sufficiency of the Allegations.

Section 10(b) makes it unlawful:

> [t]o use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered ... any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b). Rule 10b-5 makes it unlawful for any person to use interstate commerce:

> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240. 10b-5. In cases involving publicly-traded securities and purchases or sales in public securities markets, the elements of an action under Section 10(b) and Rule 10b-5 are: (1) a material misrepresentation or omission, (2) scienter, (3) a connection with the purchase or sale of a security, (4) reliance, (5) economic loss, and (6) loss causation. *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005).

### a. **Plaintiff failed to plead misstatements with particularity.**

Under the PSLRA, a securities fraud complaint must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). As the court stated in *In re Vantive Corp. Sec. Litig.*, 110 F. Supp. 2d 1209, 1215-1216 (N.D. Cal. 2000):

> To meet these requirements, plaintiffs must couple each separate allegation in the [complaint] with details identifying the sources upon which such beliefs are based. This requirement is the PSLRA's single most important weapon against pleading fraud by hindsight because it forces plaintiffs to reveal whether they base their allegations on an inference of earlier knowledge drawn from later disclosures or from contemporaneous documents or other facts.

In this case, "[i]n violation of the Reform Act's requirement that a complaint must specify the reasons why *each* statement is alleged to have been misleading, the Complaint lumps all alleged misrepresentations together in one unwieldy [17-page] segment," which covers approximately five years and 33 separate public filings -- including all Form 10-Ks and Form 10-Qs filed during the Class Period, and then follows with one conclusory paragraph as to "why *all* the statements were allegedly false when made." *Wenger v. Lumisys, Inc.*, 2 F. Supp. 2d 1231, 1243 (N. D. Cal. 1998) (emphasis in original); *see*, Complaint ¶¶ 95-128. The Complaint does not address why Defendants' allegedly misleading statements were false either individually or by category, but merely asserts that each statement was "falsely" made or reported by Defendants. *Id.* Plaintiff concludes that:

> [a]ll of the aforementioned financial statements and press releases issued by Hansen were false and misleading when issued because the Company did not reveal that it had engaged in the practice of backdating option grants, had understated its compensation expenses and potential tax liabilities and overstated its net income. These financial statements and press releases were also false and misleading in that they failed to disclose that the Company had inadequate internal controls over its executive compensation award and accounting systems, which were not subject to appropriate review and audit, but rather were dominated by the directors and executives who were chief beneficiaries of the option grants.

*Id.* at 128. However, nowhere in the Complaint does Plaintiff explain in which of the myriad of ways listed in paragraph 128 each of the 17 pages of allegedly false statements are false. Accordingly, Plaintiff has "failed to craft a Complaint in such a way that a reader can, without undue effort, divine why each alleged statement was false or misleading." *Wenger*, 2 F. Supp. 2d at 1243-44; *see, also, Williams v. WMX Technologies, Inc.*, 112 F.3d 175, 178 (5th Cir. 1997), *cert. denied*, 522 U.S. 966 (1997) ("A complaint can be long-winded, even prolix, without pleading with particularity. Indeed, such a garrulous style is not an uncommon mask for an absence of detail  The amended complaint here, although long, states little with particularity."); *May v. Borick*, 1997 WL 314166, *8 (C.D.Cal. Mar. 3, 1997) ("[The complaint's] organization obfuscates rather than clarifies. Plaintiff's failure to address defendants' allegedly misleading statements individually, or even by category, and to state why each statement, or category of statements is misleading, renders this Court's task, and the task of the defendants, excessively difficult.").

In addition, Plaintiff has failed to allege, at a minimum, the "who, what, when, where, and how" of his fraud allegation as required by the PSLRA and Rule 9(b). For example, while Plaintiff alleges the existence of an "unlawful backdating scheme," he does not set forth any of the factual allegations, including when option grants were backdated, how the option grants were backdated, who was involved in the backdating, and what compensation expense was associated with the backdating. *See*, Complaint, ¶ 81 and generally. Moreover, the only detail Plaintiff does include in his Complaint -- which of the options during the Class Period Plaintiff alleges were backdated -- is simply a list of all publicly reported option grants to Hansen's employees during the Class Period. Complaint, ¶ 81  Moreover, Plaintiff alleges that Hansen's financial statements were false and misleading as a result of GAAP violations, but fails to explain which line items of the statements were false, why the statements were false, the amount by which the financial statements were misstated, what provisions of GAAP were violated, how those provisions were violated, and who was involved in the alleged GAAP violations. *See*, Complaint, ¶¶ 145-46 and generally; *see, also, In re Party City Sec. Litig.*, 147 F. Supp. 2d 282, 301 (D.N.J. 2001) ("Unsubstantiated allegations that the defendants failed to comply with GAAP lack the particularity required by Rule 9(b) and the PSLRA.").

Moreover, although Plaintiff alleges that Epstein, Taber, and Vidergauz signed Hansen's annual reports as well as a single Form S-8, there are no specific allegations that Hall, Kelly, Schott, Epstein, Taber, or Vidergauz played any role whatsoever in the preparation or dissemination of any allegedly false statements. Instead, Plaintiff relies on the group pleading doctrine (*see, e.g.*, Complaint, ¶ 154), and argues that allegations concerning false and misleading statements are entitled to the presumption that those statements are the collective action of the

Defendants.³ *See,* Opposition, p. 18.

Based on the Supreme Court's refusal to overturn the Seventh Circuit's determination in *Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 437 F.3d 588, 602-03 (7th Cir. 2006), that the group pleading doctrine did not survive the PSLRA, this Court concludes that the group pleading doctrine can no longer be used in pleading cases under the PSLRA. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2511 n.6 (2007). The demise of the group pleading doctrine in post-PSLRA cases also was examined in the Fifth Circuit in *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 364 (5th Cir. 2004). This view is shared by numerous district courts within this circuit. *See, e.g., In re Tibco Software Secs. Litig.*, 2006 U.S. Dist. LEXIS 36666, at *82 (N.D. Cal. May 25, 2006) ("courts in this district are increasingly finding that the group pleading doctrine is contrary to the PSLRA"); *In re Nextcard Sec. Litig.*, 2006 WL 708663, at *3 (N.D. Cal. Mar. 20, 2006) ("This Court adopts the reasoning of the decisions concluding that the group published pleading doctrine no longer is viable after the PSLRA."). Accordingly, Plaintiff has failed to set forth in his Complaint the alleged misstatements with the requisite particularity, with respect to the Individual Defendants.

### b. Plaintiff failed to plead scienter adequately.

To adequately plead scienter under the PSLRA, Plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). In deciding if scienter has been adequately pled, "[t]he inquiry . . . is whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, ___ U.S. ___, 127 S.Ct. 2499, 2509 (2007) (citations omitted). In addition, the Supreme Court recently discussed the appropriate method for determining if the "strong inference" requirement for alleging scienter had been met:

> It does not suffice that a reasonable factfinder plausibly could infer from the complaint's allegations the requisite state of mind. Rather, to determine whether a complaint's scienter allegations can survive threshold inspection for sufficiency, a court governed by § 21D(b)(2) must engage in a comparative evaluation; it must consider, not only inferences urged by the plaintiff, . . . but also competing inferences rationally drawn from the facts alleged. An inference of fraudulent intent may be plausible, yet less cogent than other, nonculpable explanations for the defendant's

---

³ A defendant must actually make a false or misleading statement in order to be held liable under Section 10(b). *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 177 (1994). "The Ninth Circuit has interpreted this limitation to mean that an individual may become a primary violator through 'substantial participation or intricate involvement in the preparation of fraudulent statements' . . ." *Communications Workers of Am. Plan for Employees. Pensions & Death Benefits v. CSK Auto Corp.*, 2007 U.S. Dist. LEXIS22782, *11-12 (D. Ariz. Mar. 28, 2007) (*quoting Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1061 n. 5 (9th Cir. 2000)).

conduct. To qualify as "strong" within the intendment of § 21D(b)(2), we hold, an inference of scienter must be more than merely plausible or reasonable-it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent.

Tellabs, 127 S.Ct. at 2504-2505 (2007). In addition, the Ninth Circuit has explained:

> [A] private securities plaintiff proceeding under the PSLRA must plead, in great detail, facts that constitute strong circumstantial evidence of deliberately reckless or conscious misconduct.... [A]lthough facts showing mere recklessness or a motive to commit fraud and opportunity to do so may provide some reasonable inference of intent, they are not sufficient to establish a strong inference of deliberate recklessness. In order to show a strong inference of deliberate recklessness, plaintiffs must state facts that come closer to demonstrating intent, as opposed to mere motive and opportunity. Accordingly, ... particular facts giving rise to a strong inference of deliberate recklessness, at a minimum, is required to satisfy the heightened pleading standard under the PSLRA.

In re Silicon Graphics Inc. Securities Litigation, 183 F.3d 970, 974 (9th Cir.1999).[4]

In this case, as explained below, Plaintiff's allegations in his Complaint, when considered collectively, do not give rise to a strong inference of scienter. In fact, "there is a total absence of factual allegations that would permit a strong inference that" Defendants participated in an illegal stock option grant date backdating scheme; knew that their representations with respect to stock option grant dates, compliance with GAAP, or the adequacy of internal controls "were false or misleading when made, if they were so[;] or that the Defendants acted in deliberately reckless disregard of their truth or falsity." In re Vantive Corp. Sec. Litig., 283 F.3d at 1089. "Without any corroborating facts, it is impossible to conclude that such allegations rest on more than hind-sight speculation." Id. (citing In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 988 (9th Cir 1999)). Considering plausible opposing inference, as required by Tellabs, the inference of scienter is not "as compelling as any opposing inference." Tellabs, 127 S. Ct. at 2510. Moreover, with respect to the Individual Defendants, the allegations do not satisfy the specificity requirement of Rule 9(b) or of the PSLRA. They neither identify what roles each Individual Defendant played in the alleged backdating scheme nor allege facts giving rise to a strong inference of scienter on the part of each Individual Defendant in any context.

### i. Plaintiff's allegations of a backdating scheme do not give rise to a strong inference of scienter.

---

[4] Although the Court recognizes that some commentators argue that Tellabs may have effectively overruled the "state of mind" requirement established in Silicon Graphics, the resolution of that argument is not relevant to this Court's ruling on this Motion. What is relevant and clear from Tellabs is that the Supreme Court concluded that the Reform Act "unequivocally raise[d] the bar for pleading scienter." Tellabs, 127 S.Ct. at 2506 (quoting Makor Issues & Rights, Ltd. v. Tellabs, Inc., 437 F.3d 588, 601 (7th Cir 2006)).

In this case, Plaintiff has failed to plead any facts -- such as admissions by Hansen that the stock option grants were backdated, statements by Hansen employees or other witnesses that the stock option grants were backdated, or contemporaneous documents demonstrating that the stock options grants were backdated -- supporting his allegations that Defendants engaged in an illegal scheme to backdate stock option grants. As Plaintiff acknowledges in his Opposition, he simply has identified Hansen's publicly disclosed stock options granted during the Class Period, compared the stock option grant dates to publicly available stock price information, and then concluded that Defendants must have engaged in backdating. Complaint, ¶ 90 (finding stock option grant dates "follow a striking patter that could not have been the result of chance."). Plaintiff argues that his "empirical and statistical analysis" of the publicly available information demonstrates a strong inference of scienter under the PSLRA. See, e.g., Id.

Although Plaintiff argues that the Court can draw an inference of illegal backdating from his cursory allegations, the Court declines to draw such an inference in light of Plaintiff's failure "to plead where [his empirical and statistical] method came from whether it was used by anyone else, or whether it was peer-reviewed or bore other indicia of academic approval." *CNET Networks, Inc. Shareholder Deriv. Litig.*, 483 F. Supp. 2d at 957; *Wynn v. NBC, Inc.* 234 F. Supp. 2d 1067, 1102 (C.D. Cal. 2002) ("It is inappropriate, to put it simply, for a party to make a conclusory statistical inference as the foundation for its claim, and not provide the Court with any indication of the basis for that inference."). In fact, Plaintiff's "empirical and statistical analysis" is no analysis at all, but simply a series of charts and graphs comparing Hansen's stock price on the date of each stock option grant with the stock price on the tenth day after the stock option grant day. Complaint, ¶ 90. Plaintiff fails to define at all, much less with any sort of scientific or statistical certainty, what is meant by "trough" or "upward trend" in his charts. Moreover, Plaintiff does not explain why a higher stock price on the tenth day after a stock option grant date is significant, or how it gives rise to a strong inference of scienter. *CNET*, 483 F. Supp. 2d at 958 (finding that plaintiffs failed to plead a pattern of backdating by merely "pointing out instances where options were granted at a periodic low point in stock price, followed by an increase"). From the beginning of 1997 until the end of 2005, Hansen's stock price increased approximately 15,000 percent, from $1.06 per share to $78.81, which includes a 2-for-1 stock split. RJN, Ex. N, at 776, 878. Because Hansen's stock price was generally rising, it is not surprising that Hansen's stock price would have risen following the twelve stock option grant dates identified in the Complaint.

Furthermore, Plaintiff cites five stock option grant dates in 2004 and 2005 that he contends were backdated -- January 15, 2004, March 23, 2005, September 28, 2005, November 1, 2005, and November 11, 2005. Complaint, ¶ 90. However, the stock price ten days after the September 28, 2005, date was actually 4.13 percent lower (even though Plaintiff labels this stock option grant as occurring during an "upward trend"). *Id.* The other increases of between 10.42 percent and 36.53 percent were in line with Hansen's average ten-day stock price increase of 13.2 percent during 2004 and 2005, when the Hansen's stock price rose approximately 332 percent in each of those years. RJN, Ex. C, at 57. Likewise, Hansen's stock price ten days after six of the other stock option grant dates cited by Plaintiff as having been backdated is either the same or lower than on the stock option grant date or show nominal increases. Complaint, ¶ 90. Therefore, Plaintiff has pled no facts that would give rise to a strong inference of scienter, or even demonstrate that any rises in Hansen's stock price following the granting of an option were at all

significant, or due to anything other than Hansen's overall stock performance. Accordingly, Plaintiff has failed to satisfy the *Tellabs* standard for pleading a strong inference of scienter.

In addition, the Form 4s for the stock option grants on May 28, 2003, March 23, 2005, Sept. 28, 2005, Nov. 1, 2005, and Nov. 11, 2005, were all filed with the SEC within days of the grants. RJN, Ex. P. The filing of the Form 4s corroborates the grant dates, and makes backdating of these options highly unlikely, regardless of the change in the stock price. *CNET*, 483 F. Supp 2d at 961 (rejecting allegations of backdating for grants on which Form 4s were filed because "it is highly unlikely that defendants could have gone back in time to change the date for this grant if it was on record with the SEC two days after the fact").

Plaintiff also alleges in his Complaint that the October 20, 2006, Glass Lewis & Co. report, which found instances of late Form 4s for stock option grants filed by Hansen, supports the presence of an illegal backdating scheme. However, the October 20, 2006, Glass Lewis & Co. report specifically acknowledged that the late filing of SEC Form 4s did not necessarily indicate backdating. RJN, Ex. O, at 1 & 5. Moreover, the Special Committee investigated the issues raised by the Glass Lewis & Co. report, and found that the filing of late Form 4s did not support a finding of backdating. RJN, Ex. L., at 1. Therefore, the Glass Lewis & Co. report does not give rise to a strong inference -- or even any inference -- of scienter in an allegedly illegal stock option grant backdating scheme.

Finally, while Plaintiff has failed to demonstrate a strong inference of scienter with respect to an alleged stock option grant backdating scheme generally, Plaintiff also has failed to demonstrate a strong inference of scienter with respect to an alleged stock option grant backdating scheme with respect to each of the Individual Defendants. Plaintiff's failure to plead any facts related to the role or knowledge of any of the Individual Defendants or any Individual Defendant's involvement in the alleged backdating scheme is fatal to Plaintiff's showing of scienter both with respect to the Individual Defendants and with respect to Hansen. *In re Mercury Interactive Corp. Sec. Litig.*, 2007 WL 2209278, at * 10 (N.D. Cal. July 30, 2007) (dismissing claims against members of the Compensation Committee for failure to plead scienter, despite fact that the company had admitted options were backdated, and noting that "to the extent the Complaint fails to plead scienter with respect to any of the individual defendants, it also fails to plead scienter with respect to [the Company]"); *In re Atmel Corp. Deriv. Litig.*, 2007 U.S. Dist. LEXIS 54058, at 18 * (N.D Cal. July 16, 2007) (even when backdating is "almost certain," claims against individual defendants must be dismissed unless complaint provides "adequate detail regarding their role and knowledge of the alleged backdating").

### ii. Plaintiff's allegations of accounting fraud do not give rise to a strong inference of scienter.

With respect to GAAP violations, "[t]o support even a reasonable inference of scienter, much less a strong inference, 'the complaint must describe the violations with sufficient particularity; a general allegation that the practices at issue resulted in a false report of company earnings is not a sufficiently particular claim of misrepresentation.' " *In re Daou Systems, Inc.*, 411

F.3d 1006, 1016 (9th Cir. 2005) (internal citations omitted). Moreover, "scienter cannot be established by publishing inaccurate accounting figures, even when in violation of GAAP." *Id.* at 1022 (*quoting In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1426 (9th Cir. 1994)). Instead, the Complaint must allege GAAP violations, and those "allegation[s] must be accompanied by a statement of fraudulent intent." *In re Carter-Wallace, Inc. Sec. Litig.*, 150 F.3d 153, 157 (2d Cir. 1998); *DSAM Global Value Fund v. Altris Software, Inc.*, 288 F.3d 385, 390-91 (9th Cir. 2002) (plaintiff must show that defendants "knew or must have been aware of the improper revenue recognition").

In this case, Plaintiff has alleged only that "defendants engaged in improper accounting practices in violation of Generally Accepted Accounting Principles ("GAAP")." Complaint, ¶¶ 3 & 128. Plaintiff has failed to include "the approximate amount by which revenues and earnings were overstated, . . . provide[d] the dates of some of the related transactions and the . . . company employees involved in the transactions." *See, In re Daou Sys. Sec. Litig.*, 411 F.3d at 1019. Without detailed information regarding the alleged GAAP violations, the Court cannot determine "whether the alleged GAAP violations were minor or technical in nature, or whether they constituted widespread and significant inflation of revenue." *Id.*

In contrast to Plaintiff's conclusory allegations of impropriety, Deloitte & Touche, LLP, Hansen's independent auditors, issued an unqualified opinion that:

> In our opinion, such consolidated financial statements present fairly, in all material respects, the financial position of the Company as of December 31, 2006 and 2005, and the result of its operations and its cash flows for each of the three years in the period ending December 31, 2006, in conformity with accounting principles generally accepted in the United States of America. Also, in our opinion, such financial statement schedule, when considered in relation to the basic consolidated financial statements taken as a whole, presents fairly, in all material respects, the information set forth therein.

RJN, Ex. E, at 91. The Court finds Deloitte & Touche LLP's unqualified opinion "highly probative" of an absence of scienter. *See, e.g., In re IKON Office Solutions, Inc.*, 277 F.3d 658, 669 (3d Cir. 2002).

### iii. Plaintiff's allegations that Hansen lacked effective internal controls do not give rise to a strong inference of scienter.

In his Complaint, Plaintiff alleges that Hansen lacked effective internal controls and that a strong inference of scienter is shown by the fact that Hansen admitted in its March 23, 2007, Form 8-K that "[t]he Special Committee found that during the time period covered by its review, there were inadequate internal accounting controls at the Company related to its stock option grant

process." Complaint, ¶ 143. However, "allegations that Defendants had deficient internal controls during the class period does not create a strong inference that Defendants knowingly [made] false or misleading statements." *In re Loudeye Corp. Sec. Litig.*, 2007 U.S. LEXIS 60624, at *20-21 (W.D. Wash. Aug. 17, 2007) ("[t]hat the controls were inadequate is perhaps an indication of incompetence, but incompetence, even gross incompetence, is no basis for a securities fraud claim") (citation omitted). Therefore, without additional facts, "a lack of internal controls generally does not suffice to show scienter." *Commc'ns Workers*, 2007 U.S. Dist. LEXIS 22782, at *27; *In re Hypercom*, 2006 WL 1836181, at *9 (D. Ariz. July 15, 2006) ("the fact that Hypercom issued a press release recognizing a lack of effective internal controls, is not overly probative as to whether [defendant] intentionally misclassified the leases. Presumably every company that issues a financial restatement because of GAAP errors will cite as a reason lack of effective controls.").

### iv. The Individual Defendants' corporate positions do not give rise to a strong inference of scienter.

Plaintiff also alleges that a strong inference of scienter can be shown by the Individual Defendants' high-level positions within Hansen. Complaint, ¶¶ 150-58. However, the Complaint alleges no facts that give rise to a strong inference that any of the Individual Defendants either knew that the options they received were backdated or that they were in any way participated in the backdating scheme. *See, e.g., In re Zoran Crop. Deriv. Litig.*, 2007 WL 1650948, at *20 (N.D Cal. June 5, 2007) (pleading specific facts about each individual defendants' role in the options granting process, including statements from confidential witnesses). Instead, the Complaint alleges generically that "[t]he Individual Defendants, because of their positions of control and authority as officers and/or directors of the Company, were able to and did control the content of the various SEC filings, press releases and other public statements pertaining to the Company during the Class Period." Complaint ¶ 157.

However, the high rank of various Individual Defendants within Hansen is insufficient, without more, to infer a strong inference of scienter. *See, e.g., In re Oak Tech. Sec. Litig.*, 1997 WL 448168, at *11 (N.D. Cal. Aug. 1, 1997) (allegations of knowledge based on positions within a company are "insufficient to establish [defendants'] liability for alleged misstatements"); *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 282 (3d Cir. 2006) ("[g]eneralized imputations of knowledge do not suffice, regardless of the defendants' positions within the company") (citation omitted). It also is insufficient to demonstrate a strong inference of scienter for Plaintiff to allege that various of the Individual Defendants held positions on various committees, such as the executive, audit, and compensation committees. *See, e.g. In re Lockheed Martin Corp. Sec. Litig.*, 272 F. Supp. 2d 944, 956 (C.D. Cal. 2003) (dismissing complaint and finding that plaintiff had failed to allege scienter because "asserting that the men are members of Lockheed's executive committee, without describing the duties of the committee or how these defendants participated in it, does not demonstrate active involvement in day-to-day operations"). Therefore, Plaintiff "must do more than allege that . . . key officers had the requisite knowledge by virtue of their 'hands on' positions; a ruling to the contrary would eliminate the necessity for specially pleading scienter as any corporate officer could be said to possess the requisite knowledge by virtue of his or her position." *In re Audodesk, Inc. Sec. Litig.*, 132 F. Supp. 2d 833, 844 (N.D. Cal. 2000) (internal quotations and citation omitted). Plaintiff has failed to allege any specifics with respect to the Individual Defendants' knowledge or an adequate description of their activities on various

committees.

Plaintiff also alleges that the Individual Defendants had "access to adverse undisclosed information about the Company's business, operations, operational trends, financial statements, markets and present and future business prospects via access to internal corporate documents . ., conversations and connections with other corporate officers and employees." *Id.*, ¶ 153. However, Plaintiff cannot base an inference of scienter on unspecified documents and conversations. Instead, Plaintiff must allege "the date on which any such communication occurred, how [Plaintiff] learned of such a communication, the form in which such contact or communication was had, or specifics concerning information provided or received during such contact." *In re Splash Tech. Holdings, Inc. Sec. Litig.*, 160 F. Supp. 2d 1059, 1079-80 (N.D. Cal. 2001). Again, Plaintiff has failed to allege any specifics with respect to information gained by the Individual Defendants due to their access to the alleged undisclosed information and internal conversations.

### v. The Individual Defendants' signatures on Hansen's public filings do not give rise to a strong inference of scienter.

Plaintiff attempts to argue that certain of the Individual Defendants' signatures on various Hansen public filings gives rise to strong inference of scienter. However, if that were true, "scienter would be established in every case where there was an accounting error or auditing mistake made by a publicly traded company, thereby eviscerating the pleading requirements for scienter set forth in the PSLRA." *Central Laborers' Pension Fund v. Integrated Electrical Services, Inc.*, 2007 U.S. App. LEXIS 19917, at *18 (5th Cir. Aug. 21, 2007)(*quoting Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1266 (11th Cir. 2006)); *In re Interpool, Inc. Sec. Litig.*, 2005 WL 2000237, at *16 (D.N.J. Aug. 17, 2005) ("the fact that Defendants signed financial disclosures indicating that they complied with GAAP does not imply that they made misstatements with scienter"); *In re Great Atlantic & Pacific Tea Co., Inc. Sec. Litig.*, 103 Fed. Appx. 465, 470 (3d Cir. 2004) (signature on financial disclosures stating that defendants complied with GAAP does not show that they knew procedures violated GAAP). Without allegations that each of the Individual Defendants that signed various Hansen public filings knew those public filings contained misstatements, the Individual Defendants' signatures on those public filings alone does not give rise to a strong inference of scienter

### vi. The Individual Defendants' Stock Sales do not give rise to a strong inference of scienter.

With respect to stock sales, "[i]nsider stock sales are not inherently suspicious." *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1092 (9th Cir. 2002). Sales of stock by an insider becomes "suspicious only when it is dramatically out of line with prior trading practices at times calculated to maximize the personal benefit from undisclosed inside information." *Ronconi v. Larkin*, 253 F.3d 423, 435 (9th Cir. 2001) (internal citation omitted). To determine if a stock sale by an insider is suspicious, the Ninth Circuit has held that the relevant factors to be examined include:

(1) the amount and percentage of shares sold by insiders; (2) the timing of the sales; and (3) whether the sales were consistent with the insider's prior trading history. *In re Vantive Corp. Sec. Litig.*, 283 F.3d at 1092. In addition, any inference of scienter is defeated when an insider sells only a portion of his stock holdings and "end[s] up reaping the same large losses as did" Plaintiff when the stock price dropped. *Id.*

In this case, with the exception of Defendant Taber, all the Individual Defendants retained the majority of their stock holdings and, thus, potentially would suffer the same losses as other investors when the value of Hansen's stock dropped. Moreover, with respect to Defendants Sacks and Schlosberg in particular, while they both sold a portion of their stock holdings during the class period, the value of both Sacks and Schlosberg's stock holdings was significantly greater at the end of the Class Period than at the beginning. Furthermore, Plaintiff has failed to link any Individual Defendant's sale of stock to any of the alleged misstatements by Hansen. Instead, Plaintiff simply has alleged that every publicly-filed document by Hansen during the Class Period contains misstatements, and, accordingly, stock sales during the Class Period must give rise to a strong inference of scienter.

Similar to this case, the plaintiff in *In re Vantive Corp. Sec. Litig.*, 283 F.3d at 1092-93, relied upon a large number of allegedly false public statements made by the defendant corporation and alleged that insider stock sales during the class period were necessarily linked to the alleged misstatements. However, the Ninth Circuit found that "stock sales are helpful only in demonstrating that certain statements were misleading and made with knowledge or deliberate recklessness when those sales are able to be related to the challenged statements." *Id.* at 1093.

Moreover, such meritless allegations are not enough to give rise to a strong inference of scienter when the Plaintiff has chosen such an unusually long -- 260 weeks -- Class Period   As the Ninth Circuit stated in *In re Vantive Corp. Sec. Litig.*, 283 F.3d at 1092:

> First, the plaintiffs have selected an unusually long class period of sixty-three weeks. *Cf. Silicon Graphics*, 183 F.3d at 985 (alleging a class period of 15 weeks); *Ronconi*, 253 F.3d at 428-31 (alleging a class period of thirty weeks). It is obvious why they have done so; it is not because the allegations found elsewhere in the complaint support an inference of fraud throughout the class period, but because lengthening the class period has allowed the plaintiffs to sweep as many stock sales into their totals as possible, thereby making the stock sales appear more suspicious than they would be with a shorter class period.

Because Plaintiff has failed to meet his burden of demonstrating that the stock sales are related to the alleged misstatements, he has failed to demonstrate a strong inference of scienter based upon the insider stock sales. *Id.* at 1092-93.

    **c.**    **Plaintiff failed to plead materiality adequately.**

Under Section 10(b), information is material only if there is "a substantial likelihood . . . that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Basic Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988) (internal citations omitted). When the financial import of alleged misstatements is *de minimis*, those alleged misstatements are immaterial as a matter of law. *In re Westinghouse Secs. Litig.*, 90 F.3d 696, 714 (3d Cir. 1996). Simply alleging misstatements were made "is a woefully insufficient basis for finding that the misrepresentations are 'material' as a matter of law. If a misrepresentation is material simply because it is a misrepresentation, then the law's materiality requirement is altogether meaningless." *SEC v. Reyes*, 491 F. Supp. 2d 906, 908 (N.D. Cal. 2007).

In this case, Plaintiff fails to plead facts that would demonstrate that the alleged misstatements relating to stock option grants or GAAP violations would have been material to the reasonable investor. For example, Plaintiff fails to quantify the financial impact of the alleged backdating or the alleged GAAP violations. In the absence of any allegations quantifying the financial impact, Plaintiff has failed to "allege enough to allow a court to discern whether the alleged [ ] violations were minor or technical in nature, or whether they constituted widespread and significant inflation of revenue." *Alaska Elec. Pension Fund v. Adecco S.A.*, 434 F. Supp. 2d 815, 822-23 (S.D. Cal. 2006). Moreover, Plaintiff's argument that materiality can be assumed by the drop in Hansen's stock price following Hansen's public disclosures from October 31, 2006, through November 9, 2006, because the drop in the stock price indicates that "investors felt that the concern by both the SEC and the Company that backdating option grants had occurred at Hansen was material information" is unpersuasive. The drop in the stock price followed public disclosures that, as discussed in detail below, did not contain misstatements or restatements of previous misstatements, only information concerning on-going investigations by the SEC and Hansen. *See, e.g., In re National Golf Properties, Inc.*, 2003 WL 23018761, *5 (C.D. Cal. Mar. 19, 2003) (finding materiality had been alleged at pleading stage where drop in stock price followed a restatement of net earnings showing a 33 percent decrease over what had been previously reported).

### d. **Plaintiff failed to plead loss causation adequately.**

Under the PSLRA, Plaintiff must demonstrate loss causation by showing that "the act or omission of the defendant alleged to violate this title caused the loss for which the plaintiff seeks to recover damages." 15 U.S.C. § 78u-4(b)(4). The analysis of loss causation "is governed by the decisions of the Supreme Court in *Dura Pharmaceuticals* and of the Ninth Circuit in *In re Daou Systems, Inc. Securities Litigation*, 411 F.3d 1006 (9th Cir.2005)." *In re Mercury Interactive Corp. Sec. Litig.*, 2007 WL 2209278, *6 (N.D. Cal. July 30, 2007). "In *Dura Pharmaceuticals*, the Supreme Court held that the fact that a purchase price was inflated, by itself, does not establish causation of economic loss." *Id.* "Instead, the Supreme Court reaffirmed the principle that a securities plaintiff must allege both cause and loss." *Id.; see, also, Dura*, 544 U.S. at 345 (securities fraud actions do not exist "to provide investors with broad insurance against market losses, but to protect them against those economic losses that misrepresentations actually cause"). "In *Daou Systems*, the Ninth Circuit described the loss causation inquiry as considering whether 'the misrepresentations or omissions caused the harm.'" *In re Mercury Interactive Corp. Sec. Litig.*, 2007 WL 2209278 at *6 (*citing Daou Systems*, 411 F.3d at 1025). "In that case, the court found a lack of loss causation: 'if the improper accounting did not lead to the decrease in Daou's stock price, plaintiffs' reliance on the improper accounting in acquiring the stock would not

be sufficiently linked to their damages.'" *Id. (citing Daou Systems,* 411 F.3d at 1026). "The court concluded that a loss suffered in an earlier period could not be considered causally related to the alleged fraudulent conduct because that stock drop occurred when 'the true nature of Daou's financial condition had not yet been disclosed.' *Id.* (*citing Daou Systems,* 411 F.3d at 1027). As the Fourth Circuit recently held in affirming the dismissal of a complaint on loss causation grounds:

> [T]he drop in Cree's share price on June 13, 2003, more logically occurred because the market feared that a lawsuit launched by the founder and former CEO of the corporation portended a period of instability and discord that could disrupt the corporation's operations. That loss, however, is not one for which the plaintiffs in this case are entitled to compensation.

*Teachers' Retirement System of La. v. Hunter,* 477 F.3d 162, 187, 88 (4th Cir. 2007).

In this case, Plaintiff alleges that the public disclosures made by Hansen between October 31, 2006 and November 9, 2006, resulted in Hansen's stock price falling by approximately 22 percent. Specifically, Plaintiff alleges that the decline in stock price was "a direct result of the nature and extent of defendants' unlawful conduct finally being revealed to investors and the market" through the public disclosures. Complaint, ¶¶ 173-74. However, none of the three public disclosures referenced in Plaintiff's Complaint contain a disclosure of wrongdoing. For example, the October 31, 2006, 8-K simply stated that Hansen had received a letter from the SEC asking it to voluntarily produce documents related to Hansen's filing of Form 4s and its stock option grant practices. RJN, Ex. I. In fact, the 8-K noted that the SEC letter specifically stated that the request for documents "should not be construed as an indication by the SEC or its staff of any violations of law have occurred." *Id.* In addition, the November 6, 2006, press release simply stated that Hansen had formed a Special Committee to conduct an investigation into the same matters the SEC was investigating, and the November 9, 2006, press release announced that Hansen would not be able to file its 10-Q for the third quarter of 2006 on time due to the Special Committee's investigation. RJN, Ex. J. However, "the mere existence of [an] investigation cannot support any inferences of wrongdoing or fraudulent scienter on the part of [a] company or its senior management." *City of Austin Police Ret. Sys. v. ITT Educ. Serv., Inc.,* 388 F.Supp. 2d 932, 942 (S.D. Ind. 2005) ("the sharp drop in ITT's share price on the day it disclosed the search warrants shows that a company's share price can drop suddenly without any evidence or finding of wrongdoing by the company or its senior management").

### 2. <u>Leave To Amend Is Denied.</u>

Leave to amend must be granted unless it is clear that the complaint's deficiencies cannot be cured by amendment. *Lucas v. Department of Corrections,* 66 F.3d 245, 248 (9th Cir.1995). When amendment would be futile, dismissal may be ordered with prejudice. *Dumas v. Kipp,* 90 F.3d 386, 393 (9th Cir.1996).

In this case, Plaintiff requests leave to amend, but fails to offer any additional facts that could be alleged in an amended complaint. Such a failure is a strong indication that the plaintiffs

have no additional facts to plead. *See, Silicon Graphics*, 183 F.3d at 991 (denying leave to amend where plaintiff failed to offer additional facts which might cure defects in complaint); *In re VeriFone Sec. Litig.*, 11 F.3d 865, 872 (9th Cir.1993) (same). Because Plaintiff's allegations are all based on publicly-filed documents -- and not, as is the case in many securities fraud cases, on the statements of confidential witnesses and/or employees and former employees -- it is difficult to imagine what additional facts Plaintiff could allege to satisfy the strict pleading requirement of the PSLRA and Rule 9(b). In addition, Plaintiff had the opportunity to plead additional facts from those he alleged in his original complaint when he filed the corrected consolidated complaint on May 1, 2007. Accordingly, leave to amend is denied.

### B.    Violation of Section 20(a).

To state a claim under Section 20(a), a plaintiff must allege (1) a primary violation of federal securities laws; and (2) that the defendant exercised actual power or control over the primary violator. *Howard v. Everex Systems, Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000). As discussed above, Plaintiff has failed to state a claim for a primary violation of the securities laws.

In addition, Plaintiff has failed to plead that the Individual Defendants exercised the requisite control for a Section 20(a) claim. Plaintiff has alleged that "[b]y virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness fo the Company's operations and/or intimate knowledge of the false financial statements . . ., the Individual Defendants had the power to influence and control . . . the decision making of the Company . . ." Complaint, ¶ 190. However, this boilerplate allegation is insufficient to state a claim for control person liability. *In re Digital Island Sec. Litig.*, 223 F. Supp. 2d 546, 561 (D. Del. 2002), *aff'd* 357 F.3d 322 (3d Cir. 2004) ("the court concludes that the plaintiffs unsupported allegations regarding management responsibilities fail to allege with the requisite specificity that the individual defendants played a role in the alleged nondisclosures"). "[E]ven a CEO is not automatically a "controlling person" under Section 20(a)." *Id. (citing Paracor Fin. Inc. v. GE Capital Corp.*, 96 F.3d 1151, 1163 (9th Cir.1996) (concluding that the plaintiff must allege that the CEO exercised direct or indirect control over the transaction in question.)). Accordingly, this claim also will be dismissed without leave to amend.

### IV.    Conclusion

For all the foregoing reasons, the Court **GRANTS without leave to amend** Hansen's Motion to Dismiss Consolidated Class Action Complaint and the Individual Defendants' Motion to Dismiss Consolidated Class Action Complaint.

IT IS SO ORDERED.

The Clerk shall serve a copy of this Minute Order on all parties to this action.